UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN HUCKABEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-01169-GCS |
| | ) |
| MORGAN GIACOMO, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Currently before the Court is Defendant's motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 46).[1] Defendant argues that Plaintiff did not see the grievance process through to completion before filing his claim against her. Plaintiff opposes the motion. (Doc. 48, 49, 50). The Court held a hearing on the motion on April 24, 2025, heard testimony from Jeffrey Oleon, grievance officer, and took the matter under advisement. (Doc. 56). For the reasons delineated below, the Court **GRANTS** the motion.

### PROCEDURAL BACKGROUND

Plaintiff John Huckabee ("Huckabee") is a former inmate in the Illinois Department of Corrections ("IDOC"), previously incarcerated at Western Illinois Correctional Center ("Western") and Menard Correctional Center ("Menard"). On April

---

[1] Defendant filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the failure to respond to the motion for summary judgment. *See* (Doc. 47).

25, 2025, Plaintiff filed this civil action pursuant to 42 U.S.C. § 1983 for the alleged use of excessive force against him at Western and the denial of medical care for his dislocated thumb at Western and Menard. (Doc. 1). Regarding the claims against Defendant Giacomo, Plaintiff transferred to Menard on December 20, 2023. *Id.* at 10. The transfer decision was to "silence" him. Plaintiff submitted a sick call request on January 12, 2024, and Defendant Giacomo met with him to discuss his lingering injuries and pain from the assault that occurred at Western and his other chronic conditions. When Plaintiff asked to meet with a doctor, the nurse told him it would take six months to be seen due to an administrative backlog. Plaintiff insisted on treatment for his severe pain in the meantime. Defendant Giacomo told him that no pain medication was available, even though Plaintiff could see Tylenol 3 in the cabinet. Defendant Giacomo told Plaintiff that he "will live" and sent him back to his cell. *Id.*

On May 2, 2024, the Court completed its preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and construed Plaintiff's allegations into the following count:

> **Count 1**: Eighth Amendment claim against Defendant Giacomo for denying Plaintiff medical care for the lingering injuries (dislocated thumb and ongoing pain) from the assault at Western on September 7, 2023 pursuant to the sick call request he submitted on or around January 12, 2024.

(Doc. 10). [2]

---

[2]  The Court also severed Counts 1, 2, 3 and 4 into a new case. (Doc. 10, p. 4, 10); *see also Huckabee v. Shoopman,* 3:24-cv-01219-SPM.

### FACTUAL BACKGROUND

The parties agree that there is one relevant grievance: #K4-0124-0298, dated January 12, 2024. Thus, the Court will consider only this grievance in determining whether Plaintiff has exhausted his administrative remedies prior to filing this lawsuit.

On January 12, 2024, Plaintiff submitted this grievance complaining about delayed medical care and unsafe living conditions; it also named Defendant Giacomo. It was received at the first level on January 16, 2024. (Doc. 46-5). The record reflects that on September 24, 2024, the grievance counselor contacted healthcare regarding the allegations in this case. (Doc. 50, p. 1).

### LEGAL STANDARDS

Summary judgement is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgement, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a motion for summary judgement. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not

required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is left to the Court to determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds that the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id* at 742. If the court determines that the failure to exhaust was the inmate's fault, then the case is over. *Id*.

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Plaintiff is an inmate in the IDOC and is required to correctly follow the regulations contained in the IDOC's Grievance Procedures to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800,

et seq. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all of the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all of the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60

days of the receipt of the grievance the grievance officer must report their findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id.* The inmate can appeal the CAO's decision to the Administrative Review Board ("ARB") within thirty days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officer's report and the CAO's decision to his appeal. *Id.* The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Defendant asserts that Plaintiff failed to exhaust administrative remedies because he filed suit concerning these allegations and that the ARB had not issued a final decision at the time he filed his complaint on April 25, 2024. Specifically, Defendant argues that while the record reflects that Plaintiff initiated the grievance process regarding the allegations against Defendant, Plaintiff did not wait to complete the facility and ARB reviews before filing this case. Plaintiff counters that he did his part to exhaust his administrative remedies, that his grievance was not timely processed, and that the ARB did not decide on his grievance until 11 months later. The Court agrees with Defendant.

Plaintiff cannot sue first and exhaust later. And that is precisely what Plaintiff did here. Plaintiff's allegations against Defendant occurred on January 12, 2024, he submitted the grievance regarding these allegations that same day, and he filed this lawsuit on April 25, 2024. Just a little over three months passed between the submission of the grievance

at the first level, January 16, 2024, and the filing of this lawsuit, April 25, 2024. That is not enough time for the facility to complete a meaningful review of the issues contained in the grievance. Further, there is no evidence in the record that *at the time* of the filing of the lawsuit, April 25, 2024, that the facility was ignoring Plaintiff's claims in the grievance. Accordingly, this case is dismissed without prejudice for failure to exhaust administrative remedies. *See, e.g., Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (stating that "[a] premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit fully exhausting administrative remedies."). Plaintiff may refile this lawsuit.

## CONCLUSION

For the reasons delineated above, the Court **GRANTS** Defendant's motion for summary judgment on the issue of administrative remedies. (Doc. 46). The Court **DISMISSES without prejudice** Plaintiff's complaint for failure to exhaust administrative remedies. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close the case.

**IT IS SO ORDERED.**

**DATED: May 9, 2025.**

Digitally signed by Judge Sison
Date: 2025.05.09 15:10:16 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**